## G. LITTLE *vs.* J. L. BUNCE.

WHEN a judgment in favor of a plaintiff is reversed upon a writ of error, the general rule is that there is no remedy for restitution except against some party to the record.

And the general rule is the same where a judgment is reversed upon a writ of review.

A lodged with B, as collateral security, a note made by L, and payable to A, but not to order. B brought a suit against L on the note, in the name of A, and had judgment for the amount of the note and costs, which were paid by L to B. L having sued out a writ of review, upon which the first judgment was reversed, brought an action against B, to recover back the costs paid as aforesaid. It was *held*, that the action could not be sustained.

DEBT for money had and received.

The cause was submitted to the decision of the court upon the following facts:

On the 7th September, 1828, Bunce and one A. Ladd brought a suit in the name of Otis Albee, against Little, on a note for $275, dated December 1, 1826, made by Little, and payable to Albee, but not to his order. The note had been placed in the hands of Bunce and Ladd as collateral security for a debt due to them from Albee. Soon after the commencement of the suit, Ladd transferred to Bunce all his interest in the note, after which the suit was prosecuted for the benefit of Bunce alone.

At the November term of the superior court, 1830, judgment was rendered in favor of the plaintiff, Albee. against

Little, for $175 damages, and $78 26 costs of suit.    But Albee, being at that time insolvent, Bunce, in pursuance of an order of the court, gave to Little a bond with condition to repay the damages, in case the judgment should be reversed upon a review, and had execution, which was afterwards satisfied in full, and the money received by Bunce.

A writ of review was sued out by Little, and such proceedings had thereon that at May term, 1833, the said judgment was reversed.   Bunce thereupon repaid to Little the damages recovered by the first judgment; but he refusing to repay the said sum of $78 26, the costs received by him as aforesaid, this suit was brought to recover that sum.

*J. Smith*, for the plaintiff.   An action of debt is founded on a contract, either express or implied, and is confined in legal consideration to the recovery of a debt, *eo nomine et in numero*, and not for a compensation in damages.   *Bacon's Ab.*, " *Debt*," *A*; *Buller's N. P.* 167; 4 *Coke* 93, *Slade's case.*

This action is a remedy of a more extensive and general nature than either an action of covenant or assumpsit.   7 *Petersdorff* 354, (517.)

Wherever *indebitatus assumpsit* is maintainable, debt may be sustained.   *Douglas* 1, *Walker* vs. *Witter*.

After the reversal of a judgment rendered in favor of the demandant in a writ of entry, who had entered into possession, it was held that the tenant might maintain assumpsit for the mesne profits.   10 *Mass. R.* 433, *Cummings* vs. *Noyes.*

The object of this suit is to recover the sum of $78 26, the costs recovered by Albee, a sum certain; debt is, therefore, the most appropriate form of action that could be selected.

A chose in action has been defined to be a legal interest possessed by a party in a contract, or right, which, in case of opposition, cannot be reduced to beneficial enjoyment with-

out action or suit. The assignment or transfer of a chose in action has been from remotest periods interdicted.

At the common law, nothing in action, entry, or re-entry could be granted over. *Co. Litt.* 214, *a.*

This rule in its origin appears to have been applied only to real estate; but it is evident, that even at a very early period the same rule was observed as to the assignment of mere personal chattels not in possession. 5 *Petersdorff* 281, (404.)

The only strict common law right possessed by the assignee of an obligation was that of being enabled by virtue of the assignment to retain the parchment, or paper upon which it was written, and to cancel and use the same at his pleasure. *Co. Litt.* 232, *b, note* 145.

This principle is still inflexibly adhered to, so far as the remedy is concerned. The legal interest is still considered to be in the assignor, and the action must be brought in his name, to enforce the right of the assignee.

At the same time that this doctrine was held in courts of law, a different doctrine prevailed in courts of equity. The rights of an assignee were there distinctly recognized. And if an obligor, after he had notice of the assignment of a bond, paid it to the assignor, a court of equity would compel him by decree to pay it again to the assignee. 2 *Vernon* 595; 1 *Vezey* 411; 3 *P. Williams* 199.

The courts of law at length began to take notice of the equitable interests of assignees. It was said that if an assignee have an equity, that equity should be no exile in the courts of common law. And it is now well settled that courts of law will protect the equitable interests of assignees. 1 *B. & P.* 447, *Legh* vs. *Legh*; 1 *Campbell* 392, *Alner* vs. *George*; 4 *B. & A.* 419, *Innell* vs. *Newman*.

I do not state these principles of law in relation to the assignment of choses in action, as they formerly existed, or as they now exist, modified and changed so as to secure the rights of assignees at law as well as in equity, because there

is any thing of novelty in the matter; but that the source whence the modern doctrine on the subject was derived being brought into view, the ground on which the plaintiff's right to recover in this action is placed might more fully and clearly appear.

Bunce and Ladd instituted a suit against Little in the name of Albee. Little came into court with a perfect defence against Albee. In fact, Albee disclaimed the suit. Why was not the suit then dismissed? The nominal plaintiff disavowed it. Because Bunce claimed by virtue of the assignment an equitable interest in the suit against Little. This equitable claim made by Bunce was denied by Little.

Who were the persons interested in the suit?

In answering this question we determine who the real parties to the suit were.

Had Albee any interest in the suit? We answer, no. If a judgment were obtained against Little, and satisfied, it would pay so much of Albee's debt to Bunce by increasing to a like amount the real balance due to Little from Albee. Albee therefore stood indifferent between Bunce and Little, as to interest in the event of the suit, unless he could be charged by Bunce with the cost in case the action failed, which we deny.

How was the question of interest as between Bunce and Little?

If Bunce succeeded in the suit, and obtained judgment against Little, he secured his debt against Albee to the same amount, which was otherwise worthless by reason of Albee's insolvency. On the other hand, if Little had been compelled to pay the sum claimed by Bunce on Albee's account, it would have been a dead loss to him to the same amount. For Albee was in fact indebted to Little.

Bunce and Little were then the real parties in the suit.

Little presented a good defence against the nominal plaintiff. Bunce then claimed an equitable interest in the suit, that would enable him to maintain it for his own benefit.

The suit proceeded. Bunce failed to substantiate such equitable claim, and of course failed in the suit, and Little was put to more than $300 expense in defending the suit.

The same principle of equity that would enable Bunce to maintain a suit if he had established his equitable claim, requires him, now he has failed, to make out such a claim to pay the costs incurred by the other party.

It is a maxim in equity that he who asks for equity shall do what equity requires.

If this be so, we have a sound principle on which this action can be maintained. For a court of law to resort to equity for a rule to do more substantial justice between parties than can be done by known rules of law, and apply the rule so as to favor one and do gross injustice to another, would be a reproach to the law.

The first judgment having been reversed, we are now entitled in equity to recover of this defendant not only the costs which he received under that judgment, but the expenses we incurred in defending the suit. But this suit is only brought for the costs which he received.

*Bell*, for the defendant. The action is for money had and received. The defendant has received none of the plaintiff's money. He had a claim against Albee, and received the note against the plaintiff as collateral security for that debt. The suit instituted on the note was for the purpose of paying Albee's debt, and the money, when received, was received and applied to that purpose. The law is unquestionably so, on the facts agreed. The money was received on Albee's account and applied to the payment of Albee's debt. There was no privity or contract between Bunce and Little; no agreement, in fact or in law, to repay the costs which Bunce received.

But the decisive objection to the plaintiff's recovery is that the money was both paid and received under and by force of the judgment, which in regard to any thing done under

it remains as much in force now as it ever was; and the money was rightfully applied by Bunce to pay his debt against Albee. The reversal of a judgment on review does not vacate and render void the original judgment and all things done under it. The reversal of a judgment upon a writ of error has this effect, and possibly may have the effects expected by the plaintiff's counsel from a reversal on review. But when a judgment is reversed upon a review, the title to real or personal estate acquired under it is not affected; and the sheriff and parties are sustained in all things done under the original judgment which that judgment warranted to be done.

It has been holden in Massachusetts that on a writ of review the first judgment cannot be reversed in whole or in part; but the plaintiff in review will have judgment to recover back the money erroneously recovered in the former suit. 7 *Mass. R.* 25 & 348.

And our practice in like cases has been the same. If a plaintiff in an action recover judgment, and extend his execution on land, and afterwards the defendant prevails upon a review, the title to the land is not affected. The judgment is not made void, as it is by a reversal on a writ of error.

This money, then, was palpably received under process of law, which is still in force and unreversed, and therefore until the doctrine of *Moses* vs. *Macferlan,* 2 *Burrows* 1009, is overruled or forgotten, the plaintiff will not be able to recover in this action.

But the plaintiff has no equitable claim to recover the costs which he paid under the first judgment, on the facts stated. When that judgment was rendered, this plaintiff applied to the court for relief on the case as now before the court. The court made an order upon his, the defendant's, paying the costs of that suit. The plaintiff in that suit should have no execution until he gave bond to refund the damages in case the judgment should be reversed on review. This was an application to the conscience of the court to do

what to right and justice appertained to be done. How absurd would it be to order these costs paid at all events, when the interest of Bunce, and the insolvency of Albee, were before the court merely for the purpose of turning this plaintiff round to a new action to recover them back.

RICHARDSON, C. J., delivered the opinion of the court.

The question, whether this action can be maintained upon the facts stated, is entirely new. In England it could not arise, for there they have no reviews. And no case has been cited, nor has any case occurred to us, in which the question has presented itself to any court in this country.

There seems to be some analogy between the reversal of a judgment upon a writ of review and a reversal upon a writ of error ; and in order to see if any light can be obtained upon the question now before us, from the law of restitution upon a reversal of a judgment on a writ of error, we shall proceed to examine how far the analogy between a reversal of a judgment upon a writ of error and a reversal upon a review, extends.

When a judgment is reversed upon a writ of error, he against whom it was rendered is to be restored to all which he has lost by it. 2 *Saunders* 101, *y ; Lilly's Entries* 641, *& 650 ; Cro. James* 698 ; *Tidd's Prac. Forms* 336 ; 2 *Salkeld* 588 ; *Comyn's Digest " Pleader,"* 3 *B* 20.

And when a judgment is reversed upon a writ of review, the law is the same. The party prevailing upon a review is to be restored to all he has lost by the first judgment.

If lands be recovered in a writ of entry, or ejectment, and the judgment be afterwards reversed upon a writ of error, he of whom it was recovered shall have restitution. 1 *Roll. Ab.* 778 ; *Cro. Eliz.* 278, *Eyre* vs. *Woodfine.*

So if land be recovered in a writ of entry, and the judgment afterwards reversed upon a writ of review, the tenant shall have restitution.

If goods are sold by virtue of an execution, and the judgment be afterwards reversed, the title of the purchaser is not affected by the reversal of the judgment; but the debtor shall have restitution in money. *Cro. James* 246, *Goodyere* vs. *Ince*; *Moor* 573; 5 *Coke* 90, *Hoe's case*; 8 *Coke* 281, *Drury's case*; 2 *Tidd's Prac.* 1138.

And the law is without doubt the same where the judgment has been reversed upon a writ of review.

If an execution be extended upon real estate, and the judgment be afterwards reversed, the title under the extent fails and the debtor shall have the land again. 1 *Roll's Ab.* 778; *Cro. James* 246; *Yelverton* 179, *Goodyer* vs. *Junce.*

How the law is, where an execution is extended upon lands and the judgment afterwards reversed upon a writ of review, seems not yet to have been determined. Our statute regulating reviews declares that the former judgment may be reversed wholly or in part. But whether this means that the first judgment may be reversed and annulled, as upon a writ of error, or only that judgment may be rendered in favor of the plaintiff in review to recover back the money erroneously recovered by the first judgment, leaving that judgment in force, has not been settled in this State. But however the law may be in that respect, there is undoubtedly a very close analogy in many respects, between cases of judgments reversed upon writs of error and cases of judgments reversed upon writs of review.

If, as it seems to have been held in Massachusetts, the first judgment is not annulled but remains in force after the plaintiff in review has obtained judgment, 7 *Mass. R.* 26, it will follow of course that a judgment in favor of the plaintiff in review gives him no right beyond that of having his judgment enforced against the defendant in review. It will not enable him to maintain an action for money had and received, against the defendant in review or any other person, to recover back money that has been paid in satisfaction of the first judgment. For that judgment remains in force, and not at all affected by the judgment given on the review.

But if the judgment in favor of a plaintiff in review annuls the first judgment, it has precisely the effect of the reversal of a judgment upon a writ of error.

We shall therefore consider, whether this action could have been maintained, if the first judgment had been reversed upon a writ of error.

In *Vesey* vs. *Harris and wife, Cro. Car.* 328, the wife, while sole, recovered judgment against Vesey, which was satisfied. Vesey brought a writ of error, and the judgment was reversed. She then married Harris, upon which Vesey brought a *scire facias* against the husband and wife, to have restitution, and it was held to lie.

But in *Rex* vs. *Leaver*, 2 *Salkeld* 587, where one was convicted upon an indietment and fined £100, which was paid into the hands of the collectors, and the judgment afterwards reversed upon a writ of error, Lord Holt seems to have been of opinion that no remedy for restitution could be had against the collectors, because they were not parties to the record.

When a single woman, who has obtained a judgment, marries after that judgment has been reversed upon a writ of error, there must without doubt be a remedy for restitution against the husband. So if any one who has had judgment, dies after the judgment has been reversed, there must be a remedy against his executor or administrator to obtain restitution. But in general there is no remedy against any body who was not a party to the record.

Lord Coke thus explains the law on this subject, when a judgment in a real action is reversed. "When any man ' recovers any possession or seizin of land in any action by ' erroneous judgment, and afterwards the judgment is revers- ' ed, the plaintiff in the writ of error shall have a writ of ' restitution, and that writ, reciting the first recovery and the ' reversal of it in the writ of error, is that the plaintiff in the ' writ of error shall be restored to his possession and seizin ' *una cum exitibus* thereof from the time of judgment. By ' which it appeareth that the plaintiff in the writ of error

' shall have restitution against him who recovered, of all the ' mesne profits without any regard by whom taken. For the ' plaintiff in the writ of error cannot have any remedy against ' any stranger, but only against him who is party to the writ ' of error; and therefore the words of the said writ com- ' mand the sheriff to enquire of the issues and profits gene- ' rally between the reversal and the judgment, with all ' which he who recovered shall be charged. And as the ' law chargeth him with all the mesne profits, so the law ' gives to him remedy, notwithstanding the reversal, against ' all trespassers in the *interim*. For otherwise the law should ' make a construction by relation to discharge them who are ' wrong doers and to charge him who recovered with the ' whole, who peradventure hath good right, and him who ' entered by judgment of law which peradventure is reversed ' for want of form, or negligence, or ignorance of a clerk. ' And therefore as to that purpose, the judgment shall not be ' reversed *ab initio* by fiction of law, but as the truth was, ' the same stands in force until it was reversed. And there- ' fore the plaintiff in the writ of error, after the reversal shall ' not have an action of trespass mesne, because he shall re- ' cover all the mesne profits against him who recovered ; nor ' he that recovered shall be barred of his action of trespass, ' for a trespass mesne by reason that his recovery is reversed, ' because he shall answer for all the mesne profits of the ' plaintiff in the writ of error." 11 *Coke* 21—22, *Menvill's case.*

The principles thus explained by Coke, were recognized as sound law by the supreme court of New-York, in *Case* vs. *Degoes,* 3 *Caine's R.* 261.

If, then, the judgment against Little had been reversed upon a writ of error, what would there have been in the case that could have made it an exception to the general rule that there is no remedy for restitution against any one who is not a party to the record ? Bunce prosecuted the action. But he prosecuted in the name and for the benefit of Albee.

Whatever might be recovered was to go in satisfaction of Albee's debt. Bunce held the note only as collateral security for Albee's debt. Albee was not only the nominal but the real party. The debt was still his, although it had been pledged to Bunce.

It appears by the report of this case in *5 N. H. R.* 277, that Little's defence was a set-off against Albee, and the real controversy between the parties was whether Little had so acquiesced in the assignment of the note as to deprive him of the benefit of the set-off. Bunce had without doubt an interest in the suit. But this did not make him a party to the record. Had Little prevailed on the first trial, his remedy for costs must have been an execution against Albee. He could have had no remedy against Bunce. Upon a reversal of the first judgment on a writ of error he could have had no writ of restitution against Bunce. *Tidd's Prac. Forms* 337—338. How could the reversal give any right to restitution against any other person than Albee? The judgment for restitution would have been against him. There is no case to be found that gives the slightest countenance to the supposition that there could in that case have been any remedy whatever against Bunce.

If, then, the judgment on the review had the effect to annul the first judgment, it is very clear that all the right acquired by it on the part of Little was to have execution against Albee to recover back whatever he had paid. The judgment on the review was against Albee. The sum paid by Little upon the first judgment must be considered as having been paid to Albee, in whose favor that judgment was. And the cost paid by him on that judgment can no more be followed into the hands of Bunce in this case, than it could be followed into the hands of counsel, had it been retained for fees.

Bunce had no other remedy to enforce the payment of the note against Little, than a suit in the name of Albee. And now, since the judgment he obtained in that suit has been

reversed, we are of opinion that the law furnishes Little no
other remedy for a restitution of what he paid under the
first judgment, than the judgment he obtained against Albee
on the review.

*Judgment for the defendant.*